JANIE L. FRANK (Texas Bar No. 07363050)
Email: frankj@sec.gov
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900, Unit #18
Fort Worth, Texas 76102
Telephone: (817) 900-6478
Facsimile: (817) 978-4927

Local Counsel:
U.S. Securities and Exchange Commission
Douglas M. Miller, California Bar No. 240398
Email: MillerDou@sec.gov
444 South Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3837
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| JACK D. MASSIMINO and ROBERT C. OWEN, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the

COMPLAINT 1

1. Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2. Corinthian Colleges, Inc.'s ("Corinthian") common stock was offered and sold pursuant to Form S-8 offerings and was a security under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

3. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

4. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a). because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.

## SUMMARY

5. Defendants were formerly key senior executives at Corinthian, a publicly held company that operated for-profit schools in the United States and Canada. Corinthian is now defunct. For most of the period from November 2004 until August 2015, Massimino was Corinthian's Chief Executive Officer ("CEO"). Owen joined Corinthian in 2003 as the Controller, became its Chief Accounting Officer ("CAO") in 2005, and was promoted to Executive Vice President and Chief Financial Officer ("CFO") in 2011.

6. On August 16, 2013, shortly after the end of Corinthian's 2013 fiscal year ("FY 2013")[1], the U.S. Department of Education ("ED") warned Corinthian that, for FY 2011, ED found it had artificially inflated a key regulatory metric that determined if and under what terms Corinthian could access federal student loan

---

[1] 1  Corinthian's fiscal years ("FY") ended on June 30 of any given year and started on July 1. For example, its FY 2013 began July 1, 2012, and ended June 30, 2013.

COMPLAINT 2

funds.

7. To receive federal student loans and grants, Corinthian submitted an annual financial report to ED. ED then calculated the metric, called the "Composite Score," which determined the timing and conditions of Corinthian's access to the federal student aid funds. Corinthian needed a Composite Score of at least 1.5 to receive unqualified access to Title IV Funds. It also needed a Composite Score of at least 1.5 to meet requirements imposed by its commercial banks (the "Banking Syndicate"), which funded Corinthian's $145 million long-term line of credit. Under ED's methodology, increases in long-term debt effectively increased Corinthian's Composite Score.

8. According to ED, Corinthian had inflated its long-term debt immediately before its fiscal year-end on June 30, 2011, and then repaid those loans immediately after the next fiscal year started. In its August 16, 2013 letter, ED formally notified Corinthian that the company's practice of inflating its Composite Score by borrowing on its long-term credit facility and immediately paying down such debt after the beginning of the next fiscal year was a "questionable accounting treatment" under ED regulations. ED removed such borrowings from the long-term debt category under ED regulations, gave effect to some other corrections, and calculated Corinthian's 2011 Composite Score as 0.9, well below the 1.5 Corinthian needed to continue its unqualified access to federal student aid funds and to satisfy its Banking Syndicate. After receiving ED's August 16, 2013 letter, Corinthian filed a Form 8-K (to announce a material event) with the SEC on August 20, 2013, and a Form 10-K (its annual report for FY 2013) on September 3, 2013. Both forms reported ED's Composite Score finding for FY 2011 and referenced ED's August 16, 2013 letter. However, Corinthian's disclosures in both public filings were misleading and incomplete.

9. Corinthian failed to disclose in both filings that it had employed a similar year-end borrowing practice—which it characterized as long-term debt—to

COMPLAINT 3

inflate its Composite Scores for FY 2012 and FY 2013.  Further, although Corinthian disclosed in both filings that it disagreed with ED's regulatory conclusion as to its year-end borrowing practice, it failed to disclose that any continuation of that practice created substantial risk for Corinthian's continued access to federal student loan funding, which constituted approximately 80% of its revenues, as well as its access to its long-term line of credit from its Banking Syndicate.  As a result, Corinthian faced severe financial and regulatory risks, which it did not properly disclose.  Based on this failure to disclose these material facts and the resulting regulatory risks, Corinthian's filings on Form 8-K and Form 10-K were materially misleading.

10.    Massimino and Owen helped cause this deficiency.  Each reviewed and approved these public filings.  As Corinthian's CEO and CFO, respectively, Massimino and Owen both signed the misleading Form 10-K, and Owen signed the misleading Form 8-K.  They knew facts that should have led each of them to take steps to ensure that Corinthian's disclosures accurately described the regulatory risk the company faced, but instead each signed a disclosure that failed to do so.  After Corinthian filed these misleading reports, it received cash proceeds from the issuance of common stock related to the company's employee stock purchase plan.  Those shares were issued pursuant to Forms S-8 that incorporated these misleading filings.

11.    Less than a year later, ED slowed Corinthian's access to Title IV funds for unrelated reasons.  As a result, Corinthian curtailed its operations and, in May 2015, filed for bankruptcy.

12.    The Commission brings this action to obtain permanent injunctive relief and a civil money penalty against each Defendant.

## THE DEFENDANTS

13.    Jack D. Massimino, 69, is presently a resident of Oregon. He was the CEO and a director of Corinthian at all times relevant to this Complaint.  Among other things, Massimino reviewed and approved for filing the reports filed by Corinthian with the Commission and signed the company's 2013 Form 10-K.

14.    Robert C. Owen, 57, formerly a resident of California but now a resident of Michigan, was Corinthian's Chief Accounting Officer in 2011 and its CFO from 2011 until August 2015. Among other things, Owen reviewed and approved for filing the reports filed by Corinthian with the Commission and signed the August 20, 2013 Form 8-K and the 2013 Form 10-K.

## THE ALLEGATIONS

**A.    Corinthian Was Heavily Dependent on Federal Funds.**

15.    Corinthian was a publicly held company with executive offices in Santa Ana, California. Its common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and was traded on the NASDAQ stock exchange. In 2013, Corinthian operated approximately 125 for-profit, post-secondary campuses in the United States and Canada, at which it offered courses, certifications, and degrees. At the end of its 2013 fiscal year, Corinthian reported net revenues of $1.6 billion.

16.    Approximately 80% of Corinthian's revenues came from the federal government in the form of proceeds of student loans and grants under Title IV of the Higher Education Act of 1968 ("Title IV Funds").

**B.    The Education Department Sets Standards, Reflected in a "Composite Score," for Title IV Funds Eligibility.**

17.    To qualify for Title IV Funds, companies such as Corinthian that operated for-profit schools were required, among other things, to submit certain information, including audited financial statements, to ED on an annual basis. Using the submission by the company to determine various financial ratios, ED computed a company's "Composite Score." Under ED's methodology, long-term debt increased an institution's Composite Score. Companies with a Composite Score of 1.5 or higher were afforded unqualified access to Title IV Funds. Companies with a Composite Score below 1.5 faced heightened scrutiny from ED and possible delays in receiving Title IV Funds. Under certain circumstances, such as a company receiving

a Composite Score below 1.5 for three consecutive years, ED could require a hefty letter of credit, or declare a company ineligible to receive Title IV Funds. Corinthian's Banking Syndicate also required Corinthian to maintain a Composite Score with ED of 1.5 or higher.

### C. Corinthian Borrowed Money to Boost Its Composite Score.

18. To achieve a Composite Score of 1.5 or higher—and thereby remain eligible for unqualified access to federal funds—Corinthian had for years engaged in a practice of borrowing millions of dollars from its long-term line of credit (the "Credit Facility") shortly before its fiscal year-end, on June 30th. However, ED concluded that Corinthian did not use those loan proceeds for long-term capital purposes, because shortly after its next fiscal year began, on July 1st, Corinthian repaid the debt. By borrowing at the end of one fiscal year and repaying after the start of the next fiscal year, ED concluded that Corinthian's fiscal year-end borrowing from its long-term credit facility served no long-term purpose. But, by characterizing these borrowings as "long-term," this practice inflated Corinthian's Composite Score, keeping it at or above 1.5.

19. In its last three years, for FY 2011 through FY 2013, Corinthian engaged in the following transactions, which increased its Composite Score:

- On June 29, 2011, the day before the end of its FY 2011, Corinthian borrowed $43 million. Two days later, on July 1, 2011, the start of its FY 2012, Corinthian repaid $25 million of the loan. Several days later, on July 6, 2011, it repaid the remaining $18 million.
- On June 28, 2012—two days before the end of its fiscal year—Corinthian borrowed approximately $58.2 million. Within two weeks, after the start of its FY 2013, Corinthian fully repaid the loan, paying $40 million on July 2, 2012, and approximately $18.2 million on July 12, 2012.
- For its FY 2013, ending June 30, 2013, Corinthian borrowed $25 million

         on June 12, 2013, $40 million on June 24, 2013, and $46,132,196 on June 26, 2013, for a total of $111,132,196. After its next fiscal year began on July 1, 2013 (FY 2014), Corinthian repaid the entirety of those loans on seven different dates, between July 3, 2013 and August 1, 2013. Without the bulk of those borrowings, which Corinthian reported to ED as long-term debt for purposes of calculating its Composite Score, the company's Composite Score would have dropped below 1.5, jeopardizing its unqualified access to Title IV Funds.

### D. ED Finds Corinthian's Composite Score Was Inflated.

20. On August 16, 2013, ED sent Corinthian a letter informing Corinthian, among other things, that $43 million borrowed at the end of FY 2011 was incorrectly included within "long-term debt" for Composite Score purposes and that, as a result, Corinthian's Composite Score for 2011 was improperly inflated. ED concluded that Corinthian's borrowing in June 2011 and prompt repayment in July 2011

> ... constituted a short term transaction that was undertaken for the purpose of artificially raising (Corinthian's) financial composite score. (ED) deems this to be a questionable accounting treatment for purposes of the composite score analysis and is excluding the amount from long term debt.

21. Accordingly, ED excluded from long-term debt in the Composite Score calculation the $43 million Corinthian borrowed in June 2011. As a result, Corinthian's Composite Score for FY 2011 dropped to 0.9.

22. As for Corinthian's FY 2012 financial report, ED stated in its August 16, 2013 letter that it had determined Corinthian's Composite Score for FY 2012 was 1.5, but noted it was still reviewing an issue unrelated to Corinthian's year-end borrowings.

### E. Corinthian Files Misleading and Incomplete Filings.

23. Corinthian filed a Form 8-K (on August 20, 2013) and its 2013 Form 10-

COMPLAINT 7

1  K annual report (on September 3, 2013), both of which mentioned ED's decision.
2  The filings also reported that Corinthian disagreed with ED that its borrowings were
3  improperly applied to the Composite Score calculation. These reports further
4  estimated that the company would receive a "passing" FY 2013 score of 1.5, and
5  warned that ED might further dispute Corinthian's scoring.

> … We believe our calculations of the financial responsibility score (of 1.5 for 2013) are correct, however, the calculation is subject to uncertainty as to the manner that ED will interpret the applicable regulations in its review of our calculation. If ED were to take a different interpretive position than we have with regard to this calculation, it could negatively impact the Company's composite score on a consolidated basis. The Company cannot provide any assurances that it will not have additional disagreements with ED regarding any other determinations ED may make regarding the Company's composite score for completed or future fiscal years.

24. Massimino and Owen failed to ensure that the filings disclosed the present fact that, for FY 2012 and FY 2013, Corinthian had engaged in the same borrowing practices that ED had found improper in FY 2011, both to achieve a passing score to satisfy ED and to comply with the terms of the Credit Facility. (See supra, ¶ 19). Corinthian's 2013 Form 10-K disclosed only the theoretical possibility that it and ED might disagree over the Composite Score calculation, in spite of the fact that ED had expressly advised Corinthian that it would disallow such year-end borrowings intended to artificially inflate the Composite Score. The generalized warnings in Corinthian's 2013 Form 10-K were insufficient. This omission of the present facts for FY 2012 and FY 2013 was misleading because investors were not told about the financial and regulatory risks facing Corinthian.

25. Instead, and contrary to ED's express statements, Massimino and Owen continued to mistakenly and incorrectly interpret the Composite Score regulations as

allowing them to give effect to the year-end borrowings and to project a "passing" Composite Score of 1.5 in the 2013 Form 10-K. They each knew or should have known that if Corinthian's year-end borrowings from FY 2012 and FY 2013 were excluded from Corinthian's Composite Score calculations, such scores would have fallen below 1.5. If that happened, Corinthian's eligibility for continuing to have unqualified access to federal funds, on which it was so heavily dependent, would be compromised, and the company's existence as a "going concern" could be in jeopardy.

### F.   Corinthian Issues Stock After the Misleading Publicly Filed Reports.

26.   Massimino obtained cash proceeds for Corinthian from S-8 securities offerings that incorporated the misleading statements found in the August 2013 Form 8-K and the 2013 Form 10-K. In Corinthian's Form 10-Q report for the quarter ending March 31, 2014, Corinthian reported that it received cash proceeds from the issuance of common stock related to the company's employee stock purchase plan. Those shares were issued pursuant to Forms S-8 that incorporated the misleading August 2013 Form 8-K and 2013 Form 10-K.[2] Corinthian thereby misled investors regarding the regulatory and financial risks facing the company, and, as a result, regarding its cash and liquidity.

### G.   ED Imposes Restrictions on Corinthian, Ultimately Leading to Its Bankruptcy.

27.   On June 12, 2014, before ED completed its review of Corinthian's Composite Scores for FY 2012 and FY 2013, ED imposed a timing restriction—a 21-day hold on the release of Title IV Funds for Corinthian. ED imposed this hold because of an unrelated issue—Corinthian's failure to satisfy ED's requests for

---

[2] Corinthian's Form S-8 filed February 1, 2013 with the SEC incorporated the company's subsequently filed statements, such as the August Form 8-K and the 2013 Form 10-K. Corinthian's Form S-8 filed February 6, 2014 incorporated the company's previously filed statements.

graduate placement data.

28. Uncertain that Corinthian could pay its expenses as they came due once Title IV funds were delayed, Massimino entered into an agreement on July 3, 2014 with ED that authorized Corinthian to close or sell its campuses. While this development was unrelated to Corinthian's questionable accounting practice ED found related to the company's year-end borrowings, it demonstrates the fact that Corinthian's unqualified access to Title IV funds – which was at risk due to ED's scrutiny of Corinthian's repeated year-end borrowing practices (as detailed in this Complaint) – was critical to its viability.

29. After July 2014, Corinthian ceased filing periodic and other reports required of publicly held companies. NASDAQ delisted its stock in February 2015. Corinthian sought Chapter 11 bankruptcy protection on May 4, 2015, and its assets are now being liquidated.

30. On May 11, 2015, ED notified Corinthian that it was removing the year-end borrowings that Corinthian had classified as long-term debt from that category in its Composite Score calculations for FY 2012 and FY 2013. ED recalculated Corinthian's Composite Scores at 1.2 for each year. Scores that low would have allowed ED to delay or halt Corinthian's access to Title IV funds and would have violated the terms of its Credit Facility. Since Corinthian had essentially ceased operations by May 11, 2015, and was no longer receiving Title IV funds, ED did not require the filing of any security or other action.

## FIRST CLAIM FOR RELIEF

**Violations of Section 17(a)(3)**

**of the Securities Act [15 U.S.C. §§ 77q(a)(3)]**

**(against Defendant Massimino)**

31. The SEC realleges and incorporates by reference paragraphs 1 through 30 above.

32. By negligently engaging in the conduct described above, Defendant

1 Massimino, directly or indirectly, singly or in concert with others, in the offer or sale
2 of securities and by use of the means and instrumentalities of interstate commerce or
3 by use of the mails, engaged in transactions, practices, and courses of business which
4 operated or would operate as a fraud and deceit upon the purchasers of securities.

33. By reason of the foregoing, Massimino has violated and, unless enjoined, will continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a) (3)].

34. With respect to violations of Section 17(a)(3) of the Securities Act, Massimino was negligent in his actions described above.

## SECOND CLAIM FOR RELIEF

**Aiding and Abetting Corinthian's Violations of Section 13(a)**

**of the Exchange Act and Rules 12b-20, 13a-1 and 13a-11 Thereunder**

**(Against Defendants Massimino and Owen)**

35. The SEC realleges and incorporates by reference paragraphs 1 through 30 above.

36. Corinthian, as a public company with common stock registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], was required to file annual and current reports in accordance with Section 13(a) of the Exchange Act [15 U.S.C. § 78m] and Rules 13a-1 and 13a-11 thereunder [17 C.F.R. §§ 240.13a-1, and 240.13a-11]. Exchange Act Rule 12b-20 [17 C.F.R. §§ 240.12b-20] requires that reports contain the information expressly required to be included in the statement or report and that there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

37. By reason of the foregoing, Massimino and Owen aided and abetted, and unless enjoined will continue to aid and abet, Corinthian's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m], and Rules 12b-20, 13a-1, and 13a-11 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Permanently enjoin Massimino from violating Section 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(3)].

### II.

Permanently enjoin Massimino and Owen from aiding and abetting violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m], and Rules 12b-20, 13a-1, and 13a-11 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-11].

### III.

Order Massimino to pay a civil penalty in the amount of $80,000, pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] for the violations alleged herein.

### IV.

Order Owen to pay a civil monetary penalty of $20,000, pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] for the violations alleged herein.

Dated: February 25, 2019

*/s/ Douglas M. Miller*
DOUGLAS M. MILLER
Attorney for Plaintiff
Securities and Exchange Commission